58 S.E.2d 757 (1950)
231 N.C. 680
GRAHAM
v.
NORTH CAROLINA BUTANE GAS CO. (two cases).
No. 383.
Supreme Court of North Carolina.
April 12, 1950.
*760 A. McL. Graham, Clinton, F. Ogden Parker, Goldsboro, and Warlick & Ellis, Jacksonville, for plaintiffs, appellants.
Butler & Butler, Clinton, for defendant, appellee.
ERVIN, Justice.
On the trial of an action, the competency, admissibility, and sufficiency of the evidence are for the court while the credibility of the witnesses, and the probative force and weight of the testimony are for the jury. Queen City Coach Co. v. Lee, 218 N.C. 320, 11 S.E.2d 341.
A motion for a compulsory nonsuit under the statute now codified as G.S. § 1-183 challenges the legal sufficiency of the evidence to take the case to the jury and support a verdict for the plaintiff. Ballard v. Ballard, 230 N.C. 629, 55 S.E.2d 316; Lea v. Bridgeman, 228 N.C. 565, 46 S.E.2d 555; Ward v. Smith, 223 N.C. 141, 25 S.E.2d 463. When the defendant moves for a compulsory nonsuit, he admits, for the purpose of the motion, the truth of all facts in evidence tending to sustain the plaintiff's claim; and the plaintiff is entitled to have the court, in ruling on the motion, to give him the benefit of every favorable inference which the testimony fairly supports. Higdon v. Jaffa, 231 N.C. 242, 56 S.E.2d 661; Hughes v. Thayer, 229 N.C. 773, 51 S.E.2d 488; Reid v. City Coach Co., 215 N.C. 469, 2 S.E.2d 578, 123 A.L.R. 140. A motion for a compulsory nonsuit can not rightly be allowed unless it appears, as a matter of law, that a recovery can not be had by the plaintiff upon any view of the facts which the evidence reasonably tends to establish. 53 Am.Jur., Trial, section 299. This being true, the court can not properly enter a compulsory nonsuit and thereby withdraw the case from the jury if the facts are in dispute, or if the testimony in relation to the facts is such that different conclusions may reasonably be reached thereon. Cox v. Hinshaw, 226 N.C. 700, 40 S.W.2d 358; Phillips v. Nessmith, 226 N.C. 173, 37 S.E.2d 178; Newbern v. Leary, 215 N.C. 134, 1 S.E.2d 384; Oberly & Newell Lithograph Corporation v. Clark, 214 N.C. 400, 199 S.E. 398.
The plaintiffs seek to hold the defendant liable under the doctrine of respondeat superior for injury to their property allegedly caused by the negligence of Lee, the driver of the tank truck. In consequence, the appeals from the compulsory nonsuits raise the question whether the evidence introduced by plaintiffs at the trial is sufficient to establish these three propositions: (1) That Lee was negligent; (2) that the negligence of Lee was the proximate cause of injury to the property of the plaintiffs; and (3) that the relation of master and servant existed between the defendant and Lee at the time of the injury, and in respect to the very transaction out of which the injury arose. Carter v. Motor Lines, 227 N.C. 193, 41 S.E.2d 586; Walker v. Manson, 222 N.C. 527, 23 S.E.2d 839.
The defendant maintains that the testimony negatives liability on alternative grounds. The defendant asserts initially that the plaintiffs owned, maintained, and controlled the gas range, and by reason thereof were responsible for its condition; that the fire and the resultant injury were caused by a leak in the gas range occasioned by the neglect of the plaintiffs to keep the range in repair, or by the failure of James Neal Graham to turn off the master burner; and that in consequence the testimony *761 actually disproves the allegation of the plaintiffs that the destruction of their property was the result of the negligence of Lee. It is noted, in passing, that the suggestion that James Neal Graham failed to turn off the master burner runs counter to his positive testimony that "all the burners were off," which must be taken to be true in determining the propriety of the compulsory nonsuits. The defendant insists secondarily, however, that the evidence fails to make out a case for plaintiffs under the doctrine of respondeat superior, even if it be adequate to sustain a finding that the loss of the property was the proximate result of negligence on the part of Lee. This position is predicated on the theory that the testimony compels the single conclusion that Lee was employed by the defendant merely to deliver gas into the storage tank of the plaintiffs; that Lee stepped aside from that business to engage in an unauthorized act, i. e., to repair the gas range of the plaintiffs; that any negligent conduct on Lee's part occurred in the performance of such unauthorized act; and that in consequence the relation of master and servant did not exist between the defendant and Lee in respect to the transaction out of which the injury arose, i. e., the repair of the gas range.
The trial court deemed these views to be valid, and dismissed the actions on compulsory nonsuits. In so doing, it committed error, notwithstanding that the plaintiffs owned and maintained the gas range, and that Lee was authorized by the defendant merely to make delivery of its gas.
It is a scientific fact "that gas ordinarily used for fuel is so inflammable that the moment a flame is applied it will immediately ignite with an instant explosion, if it is present in any considerable volume." Holmberg v. Jacobs, 77 Or. 246, 150 P. 284, 285, Ann.Cas.1917D, 496. This being true, such gas is a dangerous substance when it is not under control. For this reason, the law, which is ever heedful of realities when it formulates rules to govern the conduct of men, has established these principles in respect to the liability of gas companies for injuries resulting from escaping gas:
1. A company, which deals in gas as an article of merchandise, must use reasonable care to avoid injury to others by its escape. Reasonable care is that degree of care which an ordinarily prudent person would exercise under like circumstances in managing such a dangerous agency. Barbeau v. Buzzards Bay Gas Co., 308 Mass. 245, 31 N.E.2d 522; Moran Junior College v. Standard Oil Co. of California, 184 Wash. 543, 52 P.2d 342; Barrickman v. Marion Oil Co., 45 W.Va. 634, 32 S.E. 327, 44 L.R.A. 92; 42 Am.Jur., Gas Companies, section 24. A gas company is answerable in damages under the principles governing liability for negligence if it fails to employ reasonable care to prevent the escape of gas, and if its failure in such respect is the proximate cause of injury to the person or property of another. 24 Am.Jur., Gas Companies, sections 20, 21, 22; 38 C.J.S., Gas, §§ 40, 41, 43.
2. The general rule requiring a gas company to use reasonable care to prevent the escape of gas applies to its delivery of gas into the building of a customer. Manning v. St. Paul Gaslight Co., 129 Minn. 55, 151 N.W. 423, L.R.A.1915E, 1022, Ann.Cas.1916E, 276; 38 C.J.S., Gas, § 42.
3. Where a gas company does not install the gas fixtures in a customer's building and does not own them and has no control over them, it is in no way responsible for their condition or for their maintenance. Consequently, it has the right to act upon the assumption in the absence of notice to the contrary that such fixtures are sufficiently secure to permit gas to be introduced into the building with safety, and is not liable for an injury caused by a leak therein, of which it has no knowledge. Triplett v. Alabama Power Co., 213 Ala. 190, 104 So. 248; Milligan v. Georgia Power Co., 68 Ga.App. 269, 22 S.E.2d 662. See, also, these annotations: 138 A.L.R. 871; 90 A.L.R. 1082; 47 A.L.R. 488; 29 A.L.R. 1250; and 25 A.L.R. 262.
4. Where a gas company, which is engaged in supplying gas to a customer's *762 building, becomes aware that such gas is escaping from the gas fixtures on the premises into the building, it becomes the duty of the gas company to shut off the gas supply until the further escape of gas from the fixtures can be prevented, even though the fixtures do not belong to the company and are not in its charge or custody. If the gas company continues to transfer gas to the fixtures on the premises after it learns that the gas is escaping therefrom, it does so at its own risk, and becomes liable for any injury proximately resulting from its act in so doing. Clare v. Bond County Gas Co., 356 Ill. 241, 190 N.E. 278.
This fourth proposition finds emphatic expression in Windish v. People's Natural Gas Co., 248 Pa. 236, 93 A. 1003, and Phillips v. City of Alexandria, 11 La.App. 228, 123 So. 510. In the Windish Case, the Supreme Court of Pennsylvania said: "We fully agree with the suggestion that the defendant company, even if the duty to repair the service line did not devolve upon it, could not continue to furnish gas through that service line if known to be defective without making itself liable in damages for injuries resulting therefrom" [248 Pa. 236, 93 A. 1005]; and in the Phillips Case, the Court of Appeal of Louisiana declared: "Natural gas is an explosive and a highly dangerous substance, so that the city in handling it must be held to a degree of care commensurate with the danger. In view of that fact, if the employees of the city knew at the time the gas was turned into the service pipe at the curb that there was an uncapped gas opening in the house through which gas would escape, or if they become aware after it was turned on that gas was escaping into the house through such opening, and made no effort to stop the flow and protect the occupants of the house, the city, we think, would be liable, even though it did not install the plumbing or the fixtures in the house, and did not at any time connect with the piping or disconnect therefrom any plumbing fixtures." [11 La. App. 228, 123 So. 511.]
When the evidence is taken to be true and is interpreted favorably to plaintiffs in the light of these legal principles, it is adequate to support these conclusions:
When the defendant employed Lee to deliver the 50 gallons of gas, it necessarily delegated to him the performance of its duty to use reasonable care to prevent the escape of such gas during the course of delivery. While Lee was transferring the gas from the tank truck of the defendant to the storage tank of the plaintiffs, he acquired knowledge that the gas was escaping through the gas range of the plaintiffs, and was concentrating in heavy volume in the kitchen. Despite this knowledge, Lee did not shut off the gas supply until the further escape of the gas from the gas range could be prevented, but, on the contrary, continued to introduce the gas into the house of the plaintiffs until the last of the 50 gallons had been transferred from the tank truck to the storage tank. He then entered the kitchen with a flame in his hand to light the pilot light, and thus prevent any further escape of the gas, which he was employed to deliver. The explosion, fire, and consequent destruction of the property of the plaintiffs ensued.
Hence, it appears that the testimony is sufficient to warrant findings that Lee was negligent in the performance of the very mission assigned to him by the defendant, i. e., the delivery of the gas; and that his negligence in this respect was the proximate cause of injury to the property of the plaintiffs. This being true, the compulsory nonsuits are
Reversed.